# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 08-828

STATE OF LOUISIANA

VERSUS

MASON GODFREY

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT,
PARISH OF CALCASIEU, NO. 16,993-05
HONORABLE ARTHUR J. PLANCHARD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

## JIMMIE C. PETERS
## JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John D. Saunders, and Jimmie C. Peters, Judges.

Saunders, J., dissents and assigns written reasons.


**CONVICTION AND SENTENCE VACATED; VERDICT RENDERED;
AND REMANDED TO TRIAL COURT FOR SENTENCING.**



**Terri R. Lacy**
**James "David" Caldwell, Jr.**
**Harrell "Butch" Wilson, Jr.**
**Assistant Attorneys General**
**Louisiana Department of Justice**
**Post Office Box 94005**
**Baton Rouge, LA 70804-9005**
**(225) 326-6200**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Peggy J. Sullivan**
**Louisiana Appellate Project**
**Post Office Box 2775**
**Monroe, LA 71207-2775**
**(318) 387-6124**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Mason Godfrey**

**Mason Godfrey**
**Louisiana State Penitentiary**
**Angola, LA  70212**
**PRO SE**

PETERS, J.

The State of Louisiana (state) charged the defendant, Mason N. Godfrey, by bill of information with the offense of intimidation of a public official, a violation of La.R.S. 14:122, and a jury found him guilty of the charged offense. The trial court then sentenced the defendant to serve three years at hard labor.[1] In his appeal, the defendant's appellate counsel asserts five assignments of error, and he asserts three *pro se* assignments of error. For the following reasons, we vacate the conviction and sentence; enter a verdict of guilty to threatening a public official, a violation of La.R.S. 14:122.2; and remand the matter to the trial court for sentencing on that conviction.

### Assignments of Error Numbers 1 and 2
### and
### Pro Se Assignments of Error Numbers 1 and 2

The criminal charge arises from events which occurred on October 17, 2005, at the Calcasieu Parish Courthouse, involving the defendant and Paul Reggie, an assistant district attorney for the Fourteenth Judicial District. In these assignments of error, the defendant asserts that the evidence was insufficient to convict him of the offense charged. In raising the sufficiency of the evidence, the defendant denies the state's version of the evidence and, in the alternative, asserts that even if it were established that he said and did what the state's witnesses testified to, his actions and words did not rise to the level of intimidation of a public official.

On the morning of October 17, 2005, the defendant was scheduled for trial on a criminal charge unrelated to the matter before us. Mr. Reggie testified that sometime during the midmorning, the defendant approached him in the courtroom and attempted to discuss the pending charge with him. Mr. Reggie informed the

---

[1]The defendant's sentence was subsequently vacated by the trial court, and the defendant was sentenced as a habitual offender. That action of the trial court is currently before this court in Docket Number 08-1231.

defendant that ethical restraints prohibited him from speaking with him on anything other than the general status of the case because the defendant was represented by an attorney who was not present at the time. Sometime later in the morning, the defendant again approached Mr. Reggie and was instructed to wait until his attorney arrived. At this time, according to Mr. Reggie, the defendant appeared agitated. At some point thereafter, the defendant left the courtroom.

When Mr. Reggie and his investigator, Cinnamon Salvador, exited the courtroom at the lunch break, the defendant again attempted to speak with him. Mr. Reggie again refused to talk with him. According to Ms. Salvador, the defendant became so agitated that she pulled a file cart between the two men to keep them separated. As the defendant continued to raise his voice, Deputy Gene Thibodeaux of the Calcasieu Parish Sheriff's Office stepped between them and, as Mr. Reggie moved toward an elevator, instructed the defendant to leave the building.

According to Mr. Reggie, the defendant said something to the effect that he [Mr. Reggie] was "making it personal with him." Mr. Reggie responded that it was not personal, but that professional conduct rules prevented him from discussing the case with him. According to Mr. Reggie, as he moved toward the elevator, the defendant made a hand gesture as if he was pointing a gun at him and stated that "I'm going to pop-pop you." Mr. Reggie testified that he interpreted this comment to mean that the defendant "was going to shoot him at some point." He further testified that he thought the defendant was trying to coerce him into doing something that he could not do. Sometime later, as he exited the courthouse, Mr. Reggie again encountered the defendant, and testified that the two men made eye contact. Mr. Reggie then telephoned the Calcasieu Sheriff's Department and filed the complaint that gave rise to this criminal charge.

2

Ms. Salvador supported Mr. Reggie's recitation of the facts in her testimony. According to Ms. Salvador, the defendant attempted to approach Mr. Reggie two or three times before the lunch recess and, when he was unsuccessful, became more and more agitated. When she and Mr. Reggie attempted to exit the courtroom, the defendant again approached Mr. Reggie, stating that "I want to talk to you. I need to talk to you." According to Ms. Salvador, the defendant got louder and stated that "I got something for you, I got something for you." When Mr. Reggie retreated to the elevator, Ms. Salvador remained in the hallway and observed Deputy Thibodeaux escort the defendant down a flight of stairs and out of the building. She testified that when she and Mr. Reggie left the courthouse, the defendant was standing in the street, but did not approach Mr. Reggie or attempt to speak with him.

Deputy Thibodeaux also supported Mr. Reggie's version of the facts in his testimony. He testified that he observed the defendant approach Mr. Reggie a number of times while the two men were in the courtroom, and, on each occasion, Mr. Reggie made it plain that he could not speak to him without his lawyer present. As Mr. Reggie left the courtroom, the defendant again attempted to approach Mr. Reggie, telling him they needed to talk. According to Deputy Thibodeaux, the defendant asked why Mr. Reggie would not talk with him, and Mr. Reggie responded that "I can't talk to you, I don't even know you." To that comment, the defendant responded "yeah, you know me. You know me enough to where you know I will pow-pow-pow you." Deputy Thibodeaux testified that during this exchange, the defendant made a gesture with his fingers as if he were holding a gun. Deputy Thibodeaux then escorted the defendant from the building.

The defendant did not dispute the assertions that he approached Mr. Reggie on a number of occasions on the morning of October 17, 2005, but disputed the content

3

of the discussions that transpired. According to the defendant, he arrived at court at approximately 10:00 a.m., and the proceedings had already begun. Because he was worried that a bench warrant had been issued in his case, he approached Mr. Reggie for the singular purpose of informing him that he was present in court. According to the defendant, Mr. Reggie responded by saying, "I know who you are. Go sit down." He then took a seat, but approached Ms. Salvador, not Mr. Reggie, at a 10:30 recess. He testified that he asked Ms. Salvador if his lawyer was in court. He then left the courtroom to unsuccessfully telephone his lawyer.

The defendant admitted approaching Mr. Reggie during the noon recess, but suggested that the first confrontation occurred in the courtroom and not the hallway. His purpose, he testified, was only to ask if his name had been called. According to the defendant, Mr. Reggie responded by saying, "I don't want to talk to you. I don't have nothing to say to you." The defendant testified that he responded to Mr. Reggie by saying, "Sir, I'm suppose to be in court. I'm trying to find out if a bench warrant." At that point a third party stepped between him and Mr. Reggie.

The defendant testified that when Mr. Reggie did leave the courtroom, he [the defendant] approached him in the hallway, but only to apologize for his previous behavior and to again ask if his name had been called. He testified that Mr. Reggie began screaming, "I told you I don't have nothing to say." As before, his sole intent was to avoid going to jail on a bench warrant, not to discuss the case. The defendant testified that Deputy Thibodeaux grabbed him by the neck and told him to leave. The defendant denied ever threatening Mr. Reggie by words or gesture.

It is well settled that,

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven

4

beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Smith*, 07-1384, pp. 2-3 (La.App. 3 Cir. 5/28/08), 984 So.2d 238, 240 (quoting *State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371).

The jury convicted the defendant of public intimidation which is defined as "the use of violence, force, or threats upon [a number of persons including a public officer], with the intent to influence his conduct in relation to his position, employment, or duty." La.R.S. 14:122. A "[p]ublic officer" is defined as "any executive, ministerial, administrative, judicial, or legislative officer . . . of the state of Louisiana or any parish, municipality, district, or other political subdivision thereof, or of any agency, board, commission, department or institution of said state, parish, municipality, district, or other political subdivision." La.R.S. 14:2(9).

The offense of public intimidation requires specific criminal intent. Public intimidation is not the intentional use of force or threats upon a public employee, but rather the use of force or threats upon the employee with the specific intent to influence the employee's conduct in relation to the employee's duties. Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent is a state of mind and, as such, need not be proven as a fact but may be inferred from the circumstances and actions of the defendant. The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of the correctness of this determination is to be guided by the Jackson standard.

5

*State v. Stamps*, 06-971, pp. 7-8 (La.App. 5 Cir. 5/15/07), 960 So.2d 237, 240-41 (footnotes omitted).

Thus, in order to convict the defendant of the offense charged, the state was required to prove beyond a reasonable doubt (1) that the defendant threatened Mr. Reggie, (2) that Mr. Reggie is a public officer or public employee, and (3) that in threatening Mr. Reggie, the defendant had the specific intent to influence Mr. Reggie's conduct in relation to his position, employment, or duty as an assistant district attorney.

We find that a rational trier of fact could have found that the first two elements were proven beyond a reasonable doubt, but find proof of the third element lacking. As pointed out by the defendant in brief, there exists no evidence to suggest that the defendant sought to have his case continued, the charges dropped, or sought to influence Mr. Reggie in his position, employment, or duties. *See State v. Burgess*, 04-121 (La.App. 3 Cir. 6/16/04), 876 So.2d 263, and the cases cited therein.

We reject the state's argument that a rational trier of fact can infer specific intent on the part of the defendant to do more than simply determine whether his name had been called in open court from the defendant's persistence in attempting to speak to Mr. Reggie—that this persistence was clear evidence that the defendant was attempting to influence Mr. Reggie as an assistant district attorney. We note that in making this argument, the state fails to show exactly what conduct on the part of Mr. Reggie the defendant was attempting to influence. As noted in *State v. Jones*, 00-980 (La.App. 5 Cir. 10/18/00), 772 So.2d 788, it must be considered whether the threat at issue was made in anger or retaliation or whether it was made in an attempt to influence Mr. Reggie's conduct in relation to his employment duties. In the matter now before us, the defendant attempted, unsuccessfully, to speak to Mr. Reggie at

6

least three times.  Mr. Reggie refused to speak to the defendant because of ethical considerations, but did state that he would speak to a represented defendant about the status of his case.  While Mr. Reggie assumed that the defendant wanted to speak to him about the case, and not just the status, at one point he testified that he did not know what the defendant wanted to speak to him about.

Although we find that the state did not establish every essential element of intimidation of a public official and that the defendant's conviction and sentence must be set aside, our inquiry does not end here.  Even if the evidence does not support a conviction for the offense charged, discharge of a defendant is not proper when the evidence does support a conviction for a lesser and included offense.  *State v. Byrd*, 385 So.2d 248 (La.1980); La.Code Crim.P. art. 815.

In this case, all of the elements of threatening a public official have been proved beyond a reasonable doubt.  "Threatening a public official is engaging in any verbal or written communication which threatens serious bodily injury or death to a public official."  La.R.S. 14:122.2(A)(1).  The only element of La.R.S. 14:122 not required to be proved under La.R.S. 14:122.2 is that of "intent to influence [the public official's] conduct in relation to his position, employment, or duty."  La.R.S. 14:122(A).

### Assignment of Error Number 3

The defendant asserts in this assignment of error that the altercation in the courthouse hallway occurred in the presence of the trial judge, and that the trial judge should have been recused.  The record establishes otherwise.

Louisiana Code of Criminal Procedure Article 671(A)(4) provides that a judge "shall be recused when he . . . [i]s a witness in the cause."  At the first hearing on the motion to recuse, the trial judge stated that he had not witnessed any part of the

7

incident or incidents giving rise to the criminal charge, and, at that time, no one had brought the facts to his attention in any way. Thus, the trial judge refused to recuse himself. When the matter was heard anew on the morning of the trial, and before another judge of the district, the trial judge testified that he had no recollection of the events in question, although he recalled seeing the defendant "maybe twice" in the past. According to the trial judge, he only became aware of the events after the filing of the first motion to recuse. The judge assigned to hear the recusal motion then denied the motion, and trial commenced.

The defendant argues on appeal that the trial judge's denial of any knowledge of the hallway altercation does not preclude the *possibility* of him being called as a witness. Given the trial judge's testimony, and absent any evidence to the contrary, there exists no possibility of the trial judge being called as a witness. To be a witness in a cause, the trial judge must be a material witness and his testimony must relate to the guilt or innocence of the defendant. *State v. Tyler*, 342 So.2d 574 (La..1977). That is not the case in the matter now before us and we find no merit in this assignment of error. In fact, to accept this argument would open the door for any defendant not satisfied with the presiding judge to simply subpoena that judge and force recusal.

### Pro Se Assignment of Error Number 3

In this assignment of error, the defendant asserts that the trial court erred in refusing to admit evidence favorable to him. The evidence at issue is contained in the pretrial statements of Mr. Reggie and Ms. Salvador. According to the defendant, the statements contain inconsistent assertions on the part of the two witnesses, but were suppressed at trial.

In considering this assignment, we note that the defendant seems to be arguing

8

that the fact the statements at issue were not introduced into evidence constitutes a violation of the requirements of disclosure set forth in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194 (La.1963).

> For purposes of the prosecution's due process duty to disclose evidence favorable to a defendant, *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), no distinction exists between exculpatory and impeachment evidence. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). While witness statements are normally not discoverable, La.C.Cr.P. art. 723, this discovery rule must give way when a statement contains favorable information for Brady purposes. *Kyles* [v. *Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)]; see La.C.Cr.P. art. 718. In addition, the prosecution must make timely disclosure of the favorable evidence to provide the defense with adequate opportunity to present the material effectively in its case. *State v. Prudholm,* 446 So.2d 729, 738 (La.1984). This Court therefore recognized that late disclosure as well as non-disclosure of exculpatory evidence may deprive the defendant of a fair trial. *State v. Williams,* 448 So.2d 659, 665 (La.1984); *State v. Landry*, 388 So.2d 699, 702 (La.1980); *State v. Roussel,* 381 So.2d 796, 798 (La.1980).

*State v. Kemp*, 00-2228, p. 7 (La.10/15/02), 828 So.2d 540, 545.

However, our review of the record does not suggest that the state failed to disclose the content of the statements to the defendant in advance of trial. In fact, at no time does the defendant assert that the state failed to disclose the statements. The record does reflect that discovery was conducted and the statements at issue are attached to his *pro se* brief and the record does not contain any post-trial motion to produce the documents. Furthermore, the record contains no discussion of the admissibility of the statements.

Even assuming, for the purpose of argument, that the defendant did not have access to the statements before trial, the alleged inconsistent statements related to nothing more than the timing of certain events. For example, the statements do not make it totally clear if the altercation occurred just before noon or after the morning recess—although they are consistent in establishing that the primary altercation took

9

place outside the courtroom. Another inconsistency the defendant suggests is relevant is his assertion in his brief that Ms. Salvador testified that "appellant did not want to speak to anyone except Mr. Reggie," but in her written statement she said that "she thought appellant was more interested in speaking to Mr. Reggie." Our review of the written statement at issue reflects that it does not contain the language cited by the defendant.

> The United States Supreme Court has determined that there are three components of a true *Brady* violation: The evidence must be favorable to the accused, either exculpatory or impeaching in nature; the evidence must have been suppressed by the State either willfully or inadvertently; and there must be prejudice. *Strickler v. Greene,* 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); *State v. Louviere*, 00-2085 (La.9/4/02), 833 So.2d 885, *cert. denied*, 540 U.S. 828, 124 S.Ct. 56, 157 L.Ed.2d 52 (2003). Moreover, the evidence must be "material." Evidence is material only if it is reasonably probable that the result of the trial would have been different had the evidence been disclosed to Defendant. A reasonable probability is one which is sufficient to undermine confidence in the outcome of the trial. *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

*State v. Mayeux,* 06-944, p.15 (La.App. 3 Cir. 1/10/07), 949 So.2d 520, 531.

None of the alleged inconsistencies meet the three component test.

We find no merit in this *pro se* assignment of error.

### *Assignments of Error Numbers 4 and 5*

Both of these assignments of error address the defendant's subsequent adjudication as a fourth felony offender and the sentence he received as a result of that adjudication. These issues are not properly before this court in this appeal as they have been raised in a separate appeal pending before this court. Thus, we decline to address these assignments of error in this appeal.

### DISPOSITION

For the foregoing reasons, we vacate the defendant's conviction and sentence for intimidation of a public official and enter a verdict of guilty to the offense of

10

threatening a public official, a violation of La.R.S. 14:122.2. We further remand the

matter to the trial court for sentencing on this conviction.

**CONVICTION AND SENTENCE VACATED; VERDICT RENDERED; AND REMANDED FOR SENTENCING.**

NUMBER 08-828

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

STATE OF LOUISIANA

VERSUS

MASON GODFREY

**Saunders, J., dissents and assigns written reasons.**

I would affirm the trial court. I feel that the Assistant District Attorney's decision whether to speak to the Defendant is "conduct in relation to his position, employment, or duty" under La.R.S. 14:122. While the Assistant District Attorney has an ethical duty to refrain from speaking to the Defendant, his decision whether to comply with this duty is a choice he has to make that is related to his position. As such, I disagree that the third element of the crime was lacking as the majority opines. I respectfully dissent.