PER CURIAM.[1]
| following an incident in the 14th Judicial District Court involving Assistant District Attorney Paul Reggie, the state charged defendant with the felony offense of public intimidation and retaliation. In pertinent part, the offense requires proof that the accused used violence or threats against any public officer or public employee “with the intent to influence his conduct in relation to his position, employment, or dutjC’ La. R.S. 14:122(A). After trial by jury, defendant was found guilty as charged. The trial court initially sentenced him to three years imprisonment at hard labor. However, after the state instituted habitual offender proceedings, the trial court vacated its original sentence and resentenced defendant as a fourth or subsequent felony offender to 25 years imprisonment at hard labor without benefit of probation or suspension of sentence.
| ¡.Defendant appealed and in a split panel decision, the Third Circuit agreed with him that the evidence at trial did not support his conviction for public intimidation. Specifically, while concluding that the evidence supported a finding that defendant had threatened Reggie, the majority found no evidence “to suggest that the defendant sought to have his case continued, the charges dropped, or sought to influence Mr. Reggie in his position, employment, or duties.” State v. Godfrey, 08-0828, p. 6 (La.App. 3rd Cir.2/18/09), 4 So.3d 265, 269 (citation omitted)(Saunders, J., dissenting). After reviewing defendant’s remaining assignments of error and finding that they lacked merit, the court of appeal vacated his conviction for public intimidation, entered a judgment of guilty for threatening a public official, a six-month misdemeanor in violation of La. R.S. 14:122.2, and remanded for resentencing. The Third Circuit thereby pretermitted defendant’s assignments of error relating to his habitual offender adjudication. State v. Godfrey, 08-1231 (La.App. 3rd Cir.2/18/09), 4 So.3d 272. We granted the state’s application to reverse the decision below and to reinstate defendant’s conviction and habitual offender sentence for public intimidation because the trial transcript reveals that when defendant took the stand to offer the jury an exculpatory account of his encounter with Assistant District Attorney Reggie, he also provided jurors with an articulable and rational basis for convicting him of the charged offense.
The evidence at trial showed that on October 17, 2005, as Reggie worked his way through the morning docket in Division B of the 14th Judicial District Court, he had several encounters with an increasingly agitated defendant, who was scheduled for trial that day on an unrelated charge. Reggie testified that on the first occasion, he informed defendant that ethical constraints prohibited him from discussing his case with him because he knew defendant had an attorney who |sapparently was running late and not *758 present in court at that time. Reggie testified that he was aware that defendant had arrived on time at 9:00 a.m. for court and that he never considered issuing a bench warrant for him while they waited for his errant counsel, who evidently never appeared in court on that day. Shortly after the first encounter, defendant again approached Reggie, who once more instructed him to wait for his attorney to arrive. During this second encounter, Reggie noticed that defendant was becoming agitated, although he turned and walked out of the courtroom into the hallway.
After completing the morning docket, Reggie and his investigator, Cinnamon Salvador, walked out of the courtroom for lunch. Defendant was standing in the hallway against the opposite wall and he approached Reggie for a third time. Reggie recalled that when he again refused to speak with him, defendant became so agitated that Salvador maneuvered a dolly loaded with case files in between the two men to separate them. Deputy Gene Thi-bodeaux of the Calcasieu Parish Sheriffs Office also intervened to keep the men apart as Reggie walked toward the elevator. The deputy advised defendant to leave the building.
Accounts of what happened next varied among the state’s witnesses. Reggie testified that after he reached the elevator and pushed the call button, Deputy Thibodeaux moved to block the advancing defendant, who shouted at the assistant district attorney that he was “making this personal with him.” After the elevator door opened and Reggie stepped inside, he turned and observed defendant reach around the deputy and make a hand gesture as if he were pointing a gun at him. Defendant looked Reggie in the eyes and told him, “I’m going to pop-pop you.”
On the other hand, Ms. Salvador testified that she was the first out of the courtroom into the hallway with the cart load of files and thus found herself Rcaught between Reggie and defendant as he approached staring at the assistant district attorney and demanding, “I want to talk to you. I need to talk to you.” With Reggie again declining, Salvador noticed Deputy Thibodeaux approach to take control of the situation. She extricated herself from between the two men and walked over to the elevator. Salvador pressed the call button and had her back turned when she heard defendant yell at Reggie that he had “something for you.” She stepped into the elevator and observed Deputy Thibodeaux take hold of defendant to escort him downstairs. Reggie then joined her in the elevator. However, concerned that the deputy and defendant were alone in the hallway, she stepped back out and followed them downstairs as the officer walked defendant out of the courthouse. Salvador met Reggie on the first floor and the assistant district attorney used a telephone to call the sheriffs office to report the incident and to make a complaint. As they left the courthouse and headed for the District Attorney’s Office, they saw defendant standing across the street glaring at them. However, he let them pass without further incident.
Deputy Thibodeaux testified that after defendant exchanged words with Reggie over why the assistant district attorney would not speak with him, he reached around the officer with his hand in a gesture imitating a gun and informed Reggie that, “You know me enough to where you know I will pow-pow-pow you.” The deputy then escorted defendant from the building.
Defendant took the stand against his attorney’s advice and informed jurors that he had arrived late at court that morning *759 and had been concerned that a bench warrant had issued for his arrest. He therefore approached Reggie to explain his late arrival and to inquire about any bench warrants. Thus, defendant maintained that he merely sought information about whether his case had been called that | f,morning. According to defendant, he did not threaten the assistant district attorney at any point or make any menacing hand gestures. In fact, his first contact with state officials that morning occurred when he approached Ms. Salvador and began “flirting with her.” Defendant testified that he then had two confrontations with Reggie. The first occurred in the courtroom after it had emptied for the lunch break, when he was restrained not by Ms. Salvador but by a public defender after Reggie responded to his polite inquiries about any bench warrants by screaming at him. The second encounter then took place in the hallway outside, where Reggie again yelled that he would not speak to him, and where Deputy Thibodeaux grabbed him around his neck and led him away. Defendant explained that “I approached Mr. Paul Reggie ... because I was scared of going to jail .... [that] he might have called my name. I wasn’t trying to talk to him about my case.” However, defendant acknowledged that he had four prior felony convictions dating back 40 years and that he had thus spent virtually his entire adult life in prison. He also acknowledged that when they saw each other outside the courthouse as Reggie and Salvador walked back to the District Attorney’s Office, Reggie “got scared, all right, and .... actually he should have been scared, you know. You don’t do people that.”
At one point in his testimony, as the assistant district attorney described the critical encounter in the hallway outside the courtroom over the lunchtime recess, Reggie gave his “impression” that defendant wanted to talk to him about his case. Defense counsel did not object to that testimony but on cross-examination, he challenged Reggie to explain exactly what he thought defendant had wanted to speak to him about. Reggie conceded, “I have no idea.” Reggie also conceded under cross-examination that his ethical duties would not have prevented him from ^answering a defendant’s inquiry about whether his case had been called on the docket, although he also testified that usually the bailiff or his investigator screened those questions and provided the pertinent information. Cinnamon Salvador also acknowledged that she did not know what defendant wanted to talk about with Reggie, and that she heard no request by defendant to reduce the charges or continue his case. Similarly, Deputy Thibodeaux conceded that he, too, had not heard defendant say anything about his case. Nonetheless, in closing arguments, the state described Reggie as “the gatekeeper,” the person in control of the outcome in cases, and “so when Mason Godfrey attempted to talk to him, could not do so, and threatened Paul Reggie, because he would not talk to him, that ends the inquiry there.”
In reviewing the testimony at trial, the Third Circuit thought it clear that for purposes of La. R.S. 14:122, an assistant district attorney is a public official, and that jurors rationally resolved the credibility dispute between the state’s witnesses and defendant, a repeat felony offender, over the question of whether he aggressively pursued Reggie and then, by word and gesture, threatened to shoot him. Thus, the evidence fully established that, at the least, defendant had threatened a public official, a misdemeanor offense defined by La. R.S. 14:122.2 as “engaging in any verbal or written communication which *760 threatens serious bodily injury or death to a public official.”
There remained only the question of whether defendant had committed the more serious felony offense of public intimidation because he had made the threats with the specific intent of influencing Reggie in the performance of his official duties. In that regard, given the testimony of the state’s witnesses that they had no idea what defendant had sought to communicate, the majority on the court of |7appeal panel “rejected] the state’s argument that a rational trier of fact can infer specific intent on the part of the defendant to do more than simply determine whether his name had been called in open court from the defendant’s persistence in attempting to speak to Mr. Reggie — that this persistence was clear evidence that the defendant was attempting to influence Mr. Reggie as an assistant district attorney.” Godfrey, 09-0828, p. 6, 4 So.3d at 269-70. The majority specifically noted “that in making this argument, the state fails to show exactly what conduct on the part of Mr. Reggie the defendant was attempting to influence.” Id. The majority thus found that the state’s case in chief merely asked jurors to speculate that defendant’s persistent and increasingly agitated attempts to speak with Reggie concerned his case and its possible disposition as opposed to some other motive. Cf. State v. Stamps, 06-0971, pp. 8-9 (La.App. 5th Cir.5/15/07), 960 So.2d 237, 241 (“This Court has previously reviewed [the pertinent jurisprudence] and found that the common thread running through them is the consideration of whether the threats are made in anger as revenge or retaliation, or whether they are made in an attempt to influence the conduct of the public officer in relation to his or her duties. Each case turns on the facts presented.”). Dissenting, Judge Saunders observed that “[w]hile the Assistant District Attorney has an ethical duty to refrain from speaking to the Defendant, his decision whether to comply with this duty is a choice he has to make that is related to his position.” Godfrey, 08-0828 at 1, 4 So.3d at 272 (Saunders, J. dissenting).
In vacating the conviction for intimidation of a public official, and entering the verdict on the lesser offense of threatening a public official, the majority applied the general principle on review that while the due process standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), “does |8not permit a reviewing court to substitute its own appreciation of the evidence for that of the jury .... the jury cannot be permitted to speculate if the evidence is such that reasonable jurors must have a reasonable doubt.” State v. Lubrano, 563 So.2d 847, 850 (1990). However, jurors also had the entirety of defendant’s own testimony to consider, and even as counsel sought to underscore the defense of the case that defendant had merely sought information as to whether the court had issued a bench warrant for his arrest, direct examination ended in the following manner:
Q. At any point during your interaction with Mr. Reggie, did you suggest to him that he should reduce your charges, continue your case ... do anything at all to effect the proceedings that you were there for?
A. Mr. Reggie couldn’t — couldn’t reduce my charges at....
Q. Did you suggest ... any of those things to Mr. Reggie? Did you ask him to do any of those things?
A. Absolutely no, emphatically no.... Why would I?
Q. Did you ... threaten him and condition your threats on him taking any action on your case at all?
*761 A. No, sir. There was no action he could ... he could take on my case. All right. There was no action he could ... take on my case. The time limitations were already up for my case at — at the time.
[Prosecutor Wilson] Judge....
Q. [By defense counsel] Okay.
A. I need to talk to him about it.
[Prosecutor] — he’s getting into—
[Defense Counsel] No other questions, Your Honor. Thank you.
While the state placed no particular emphasis on the remarks in arguing its case to the jury, rational jurors could find from defendant’s testimony that when his attorney failed to appear in court on the day of that trial, he persisted in his |9attempts to convey personally to Reggie his belief that his case had prescribed, and that he did so with the specific intent of influencing the assistant district attorney in relation to his official conduct by prompting him to agree that the time limits for prosecuting the offense had run and that the charge should be dismissed. That inference accounted for the testimony of Ms. Salvador that she often answered routine questions asked by defendants in court and thus could have addressed defendant’s concerns that a bench warrant had issued for him “he wasn’t interested in speaking with me. He wanted to speak with Reggie.”
The decision below is therefore reversed, the defendant’s conviction for public intimidation and retaliation, and his habitual offender sentence are reinstated, and this case is remanded to the court of appeal for consideration of his assignments of error relating to his habitual offender adjudication pretermitted on original appeal.
DECISION OF THE COURT OF APPEAL REVERSED; CONVICTION AND SENTENCE REINSTATED; CASE REMANDED TO THE COURT OF APPEAL
JOHNSON and JONES, JJ„ dissent.

. Judge Benjamin Jones, of the Fourth Judicial District Court, assigned as Justice Pro Tempore, participating in the decision,