643 So.2d 1275 (1994)
STATE of Louisiana
v.
Terrence MEYERS.
No. 94-KA-231.
Court of Appeal of Louisiana, Fifth Circuit.
September 14, 1994.
*1276 Dorothy A. Pendergast, Fredericka Wicker, Asst. Dist. Attys. (Louise Korns, of counsel), Gretna, for plaintiff/appellee.
Anderson Council, Kenner, for defendant/appellant.
Before GAUDIN, GOTHARD and DALEY, J. Pro Tem.
GOTHARD, Judge.
The defendant, Terrence Meyers, was charged by bill of information with Public Intimidation in violation of LSA-R.S. 14:122. He was arraigned on October 19, 1992 and pled not guilty. After a bench trial conducted on March 18, 1993, the defendant was found guilty as charged.
A defense Motion for New Trial filed on June 16, 1993 alleging that the verdict was contrary to the law and evidence was denied on July 16, 1993. After legal delays were waived, the trial court sentenced defendant to serve eighteen months at hard labor with credit for time served. Defendant appeals the conviction and sentence.
Testimony offered at trial shows that the defendant, who was on probation at the time of this incident, went to the Jefferson Parish Sheriff's Office at the instruction of his probation officer to be fingerprinted and photographed as part of a routine procedure. The defendant went to the office of Ms. Joanna Anderson, a deputy clerk in the Sheriff's Office on Huey P. Long Avenue in Gretna, to comply with this instruction.
Ms. Anderson testified that, as an employee of the Jefferson Parish Sheriff's Office, her duties consisted of fingerprinting individuals who came to her in connection with gun registration, ABO cards, and probation and parole. She also photographed applicants for identification purposes for gun registrations, ABO cards and taxicab licenses. Her duties did not include photographing those who had been placed on probation and parole. Those individuals were customarily photographed at the Jefferson Parish Correctional Center.
In accordance with her employment directive, Ms. Anderson fingerprinted the defendant and instructed him to proceed to the *1277 Correctional Center to be photographed. When Ms. Anderson informed the defendant that he would have to go somewhere else to be photographed, the defendant became angry, demanding an explanation as to why she could not use the camera in her office to take the photograph. Despite repeated explanations, the defendant continued to insist that Ms. Anderson take his picture. He became verbally abusive and threatened her. He left, but returned shortly thereafter and threatened her again, demanding that she take his photograph. She explained again that she did not take photographs for the Correctional Center. After more treats, the defendant left. Ms. Anderson testified that the defendant appeared very angry and threatening, causing her to be fearful that he might resort to violence because of her refusal to photograph him.
Ms. Anderson saw the defendant a third time in the building. As Ms. Anderson was leaving her office she encountered the defendant exiting the men's room in the hall. He confronted Ms. Anderson and told her something to the effect that, "someone is going to get hurt". Ms. Anderson testified that she was afraid defendant would do something to harm her.
After this encounter Ms. Anderson left the building to go for a walk in an attempt to calm herself and her fears. As she was walking, a small red car passed her. The defendant, who was hanging out of the window of the car, cursed at her and called out to her stating: "You f_____ black bitch. I'm going to f___ you up, me and my boys. House nigger." As he shouted the words, the defendant made a gesture with his hand pointing his index finger at Ms. Anderson and his thumb directly up, suggesting a gun firing at Ms. Anderson.
The defense presented evidence from Mr. Bryon Evans, who accompanied the defendant to Ms. Anderson's office. Mr. Evans stated that Ms. Anderson and the defendant "had words," but denied that threats were made. He did, however, verify that the defendant called out to Ms. Anderson from the car subsequent to the encounter, calling her a "house nigger".
In his brief to this court the defendant assigns four errors, all of which relate to the sufficiency of the evidence necessary to convict the defendant on the charge of Public Intimidation. His argument, succinctly stated, is that although the defendant may be guilty of simple assault, his conduct does not constitute Public Intimidation because his intent was not to influence Ms. Anderson's conduct.
At the close of the state's case, defendant moved for a directed verdict, which appears to be more properly referred to as a motion for judgment of acquittal. This motion was denied by the trial judge.[1] Such a motion is provided for in LSA-C.Cr.P. art. 778 which reads as follows:
In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of defendant, after the close of the state's evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.
If the court denies a defendant's motion for a judgment of acquittal at the close of the state's case, the defendant may offer its evidence in defense.
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965 (La.1986); State v. Burrow, 565 So.2d 972 (La.App. 5th Cir. 1990), writ denied, 572 So.2d 60 (La.1991).
In the present case, defendant was convicted of public intimidation. The elements of that offense are set forth in LSA-R.S. 14:122, which reads as follows:

*1278 Public intimidation is the use of violence, force, or threats upon any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty:
(1) Public officer or public employee.
(2) Grand or petit juror.
(3) Witness, or person about to be called as a witness upon a trial or other proceeding before any court, board or officer authorized to hear evidence or to take testimony.
(4) Voter or election official at any general, primary, or special election.
(5) School bus operator.
Whoever commits the crime of public intimidation shall be fined not more than one thousand dollars, or imprisoned, with or without hard labor, for not more than five years, or both.
Public intimidation requires specific criminal intent. The statutory crime is not the intentional use of force or threats upon a public employee, but rather the use of force or threats upon him with the specific intent to influence his conduct in relation to his duties. State v. Love, 602 So.2d 1014 (La. App. 3rd Cir.1992); State v. Hall, 441 So.2d 429 (La.App. 2nd Cir.1983).
Specific intent is defined as that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1). State v. Thomas, 604 So.2d 52 (La. App. 5th Cir.1992). Specific intent is a state of mind and, as such, need not be proven as a fact but may be inferred from the circumstances and actions of the accused. State v. Graham, 420 So.2d 1126 (La.1982); State v. Bonck, 613 So.2d 1125 (La.App. 5th Cir. 1993), writ denied, 620 So.2d 840 (La.1993). The determination of whether the requisite intent is present in a criminal case is for the trier of fact, and a review of the correctness of this determination is to be guided by the Jackson standard, supra. State v. Huizar, 414 So.2d 741 (La.1982); State v. Bonck, supra.
The defendant relies on State v. Love, supra. In the Love case, police officers responding to a disturbance call were attempting to arrest the defendant for threatening to kill his family. Defendant put up a fight, but was subsequently subdued by officers, handcuffed, and taken to the police car. As they escorted defendant to the police car, he fought and kicked the whole time. He managed to escape again, but was subsequently apprehended a second time. While being transported, Love made several threatening comments directed toward one of the police officers and members of his family. Love was charged with several offenses in connection with this incident, but the one pertinent to the instant appeal deals with public intimidation. After setting forth the elements of this offense, the Third Circuit noted that the issue in this particular case was not whether the officer threatened is a public employee, but whether the evidence, both direct and circumstantial, was sufficient for any rational trier of fact to conclude that Love's threatening comments directed toward the officer and his family were made with the requisite specific intent to influence the officer's conduct in relation to his position, employment, or duty. The Third Circuit concluded the evidence was insufficient to support defendant's conviction for public intimidation.
We find the Love case distinguishable on its facts. In the present case, defendant threatened Ms. Anderson in the hallway of the Sheriff's Office as he exited the bathroom and also as he was leaving the area in his friend's car. The record seems clear that at the time these particular threats were made they were made in anger and were intended for retribution for failure to photograph the defendant. There was no evidence to indicate a specific intent to influence the victim's conduct in relation to her position, employment, or duty. In that sense the Love case is comparable.
However, in the instant case the defendant also threatened Ms. Anderson on two occasions in her office in an attempt to convince her to photograph him. The evidence surrounding defendant's conduct in Ms. Anderson's office was sufficient to establish the elements of the offense of public intimidation beyond a reasonable doubt. At trial, Ms. Anderson testified that defendant threatened *1279 her and insisted she take his photograph. Ms. Anderson also testified that the two times defendant was in her office, he appeared very angry, causing her to be fearful that he might become violent. The defense witness confirms that the defendant and Ms. Anderson "had words", although he denies the threats. Given the evidence presented, we cannot say that the trier of fact was unreasonable in the finding that the defendant used threats upon the victim, a public employee, with the specific intent to influence her conduct in relation to her position, employment, or duty.
Accordingly, we find no merit in the defendant's argument.
An error patent review in accordance with LSA-C.Cr.P. art. 920 reveals that at the time of sentencing, the trial judge did not inform defendant of the prescriptive period for post-conviction relief as is mandated by LSA-C.Cr.P. art. 930.8 C.[2] However, failure to inform defendant does not constitute grounds for reversing the sentence or remanding the case for resentencing. LSA-C.Cr.P. art. 921. Nonetheless, the trial court is directed to inform defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to defendant within 10 days of the rendition of this opinion and to file written proof that defendant received the notice in the record of the proceedings. See State v. Procell, 626 So.2d 954 (La.App. 3rd Cir.1993).
Accordingly the defendant's conviction and sentence is affirmed and the matter is remanded to the trial court for further action as directed in this opinion.
AFFIRMED AND REMANDED.
NOTES
[1] The denial of such a motion may be reversed on appeal only if there is no evidence of the crime or an essential element thereof or where the denial is a palpable abuse of discretion. State v. Hargrave, 411 So.2d 1058 (La.1982); State v. Mears, 445 So.2d 167 (La.App. 3rd Cir. 1984), writ denied, 446 So.2d 1231 (La.1984).
[2] Art. 930.8 C provides that "[a]t the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post conviction relief."