772 So.2d 788 (2000)
STATE of Louisiana
v.
Albert JONES.
No. 00-KA-980.
Court of Appeal of Louisiana, Fifth Circuit.
October 18, 2000.
*789 Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, Louisiana, Attorney for Appellant Albert Jones.
Paul D. Connick, Jr., District Attorney, Thomas J. ButlerCounsel of Record on Appeal, Terry M. BoudreauxAppellate Counsel, Joseph AluiseTrial Counsel, Assistant District Attorney, Gretna, Louisiana, Attorneys for Appellee State of Louisiana.
Panel composed of Judges CHARLES GRISBAUM, Jr., JAMES L. CANNELLA and JAMES C. GULOTTA, Pro Tem.
CANNELLA, Judge.
Defendant, Albert Jones, appeals from his conviction of public intimidation, his adjudication as a third felony offender and his sentence to eight years imprisonment at hard labor. For the reasons which follow, we affirm.
At approximately 6:30 a.m. on May 17, 1998, Deputy Jennifer Wingrove of the Jefferson Parish Sheriff's Office, responded to a 911 call regarding a disturbance inside the Happy Hour Lounge at 7501 Fourth Street in Jefferson Parish, Louisiana. Deputy Wingrove, with three years of police experience, testified that the 911 call concerned a "black male [who] was threatening a female inside of the bar." The perpetrator was described as wearing a black hat, a white or white and black T-shirt, and dark colored pants. When Deputy Wingrove arrived at the bar, she noticed a Caucasian woman and man, as well as a black man standing outside in front of the bar. The black man, later identified as the Defendant, matched the description of the individual who had been threatening the woman in the bar.
Deputy Wingrove approached the group. As she attempted to talk to them, the Defendant remarked, "I don't have to talk to you, you're not going to listen to me anyway.... You're white and I'm black, and you're not going to speak to me anyway, you're not going to hear anything I have to say." The Defendant left the bar and walked quickly down Jung Street.
Deputy Wingrove continued to speak to the group. After completing the interviews, the Defendant became a suspect in the disturbance. Deputy Wingrove wanted to hear the Defendant's side of the story, so she drove around the area searching for him. She saw him near the bar and requested that he stop walking so that she could talk to him. But, the Defendant *790 continued walking. Deputy Wingrove then pulled her car across the street to block the Defendant's path. She exited her car and told the Defendant that she would like to speak to him regarding the incident at the bar.
Deputy Wingrove noticed a strong odor of alcohol coming from the Defendant and observed that he appeared to be intoxicated. According to Deputy Wingrove, the Defendant was belligerent, adopted a "combative" stance, and made the following comments:[1]
I've been arrested before. I'll get out tomorrow and then you'll be in for it. I'll kill you. I'll f___k you and eat your p_____y, and then I'll set you up like I did Jeri Curl in Street Crimes, and then you can suck my big black d___k, you f_____g wh___e.
Because Deputy Wingrove took the Defendant's threats seriously and feared for her safety, she removed her "nightstick" and instructed the Defendant to get into the police car. The Defendant initially hesitated, but eventually entered the car without physical resistance. The Defendant continued making "threats and comments" in the backseat until Deputy Mike Aicklen arrived on the scene. Deputy Aicklen heard the Defendant shouting at Deputy Wingrove and thought that he was intoxicated. Shortly after Deputy Aicklen arrived, Deputy Wingrove arrested the Defendant for "disturbing the peace, resisting arrest, and public intimidation." The Jefferson Parish District Attorney filed a bill of information charging the Defendant with public intimidation, a violation of La. R.S. 14:122, to which he pled not guilty at arraignment.
After a trial by a six-person jury on May 19, 1999, the Defendant was found guilty as charged. On June 25, 1999, the trial judge denied the Defendant's motions for post verdict judgment of acquittal and new trial. The Defendant waived delays and the trial judge sentenced him to five years imprisonment at hard labor. That same day, the Defendant pled not guilty to the habitual (fourth) offender bill of information.
On March 16, 2000, the State amended the habitual offender bill of information by deleting one of the Defendant's predicate convictions. After being advised of his rights, the Defendant admitted that he was a third felony offender. The trial judge vacated the original sentence and imposed an enhanced sentence of eight years imprisonment at hard labor. It is from this conviction and sentence that the Defendant appeals.
On appeal, the Defendant assigns one error. The Defendant argues that the evidence presented at trial was insufficient to support his conviction for the offense of public intimidation, because there was no proof that he intended to influence the conduct of Deputy Wingrove in relation to her position, employment or duty, as required by the statute.
The State argues that the evidence, although circumstantial, was sufficient to prove that the Defendant actively desired the prescribed criminal consequences, namely, to persuade her to not arrest him by the use of threats.
The appropriate standard of review for determining the sufficiency of the evidence was established in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). According to Jackson, the reviewing court must decide, after viewing the evidence in the light most favorable to the prosecution, whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See also, State v. Juluke, 98-0341 (La.1/8/99), 725 So.2d 1291, 1292-1293; State v. Holmes, 98-490 (La.App. 5th Cir. 3/10/99), 735 So.2d 687, 690.
*791 When circumstantial evidence is used to prove the commission of the offense, La. R.S. 15:438 provides that "assuming every fact to be proved that the [circumstantial] evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." State v. Captville, 448 So.2d 676, 678 (La. 1984); State v. Wooten, 99-181 (La.App. 5th Cir. 6/1/99), 738 So.2d 672, 675, writ denied, 1999-2057 (La.1/24/00), 753 So.2d 208. This is not a separate test from the Jackson standard, but rather provides a helpful basis for determining the existence of reasonable doubt. Ultimately, all evidence, both direct and circumstantial, must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Wooten.
In the present case, the Defendant was convicted of public intimidation, La. R.S. 14:12. That statute provides as follows:
Public intimidation is the use of violence, force, or threats upon any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty:
(1) Public officer or public employee.
(2) Grand or petit juror.
(3) Witness, or person about to be called as a witness upon a trial or other proceeding before any court, board or officer authorized to hear evidence or to take testimony.
(4) Voter or election official at any general, primary, or special election.
(5) School bus operator.
Whoever commits the crime of public intimidation shall be fined not more than one thousand dollars, or imprisoned, with or without hard labor, for not more than five years, or both.
The offense of public intimidation requires specific criminal intent. State v. Daniels, 236 La. 998, 109 So.2d 896, 899 (1958); State v. Meyers, 94-231 (La.App. 5th Cir. 9/14/94), 643 So.2d 1275, 1278. Public intimidation is not simply the intentional use of force or threats upon a public employee, but rather the use of force or threats upon the employee with the specific intent to influence the employee's conduct in relation to the employee's duties. Id.
Specific intent is defined as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific intent is a state of mind and, as such, need not be proven as a fact but may be inferred from the circumstances and actions of the accused. State v. Graham, 420 So.2d 1126, 1127 (La.1982); State v. Lewis, 98-672 (La. App. 5th Cir. 3/10/99),732 So.2d 556, 559.
The determination of whether the requisite intent is present in a criminal case is for the trier of fact and a review of the correctness of this determination is to be guided by the Jackson standard. Id. The discretion of the jury should be impinged upon only to the extent necessary to guarantee the fundamental protection of due process of law. Jackson v. Virginia, 443 U.S. at 319, 99 S.Ct. 2781; State v. Mussall, 523 So.2d 1305 (La.1988).
Defendant argues that the evidence did not establish beyond a reasonable doubt that the Defendant's threats were intended to influence the officer's actions. He relies on three cases in support of his argument: State v. Meyers, 94-231 (La.App. 5th Cir. 9/14/94), 643 So.2d 1275; State v. Love, 602 So.2d 1014 (La.App. 3rd Cir.1992); and State v. Hall, 441 So.2d 429 (La.App. 2nd Cir.1983).
After reviewing the cited cases, we find them distinguishable from the instant case. In State v. Meyers, supra, this court affirmed the defendant's conviction for public intimidation where he had threatened the public officer in an attempt to get her to take his photograph rather than making him go to another location to have the picture taken. The court did agree with defendant's second argument that later threats, outside of the work environment, *792 would not provide proof of all of the elements of the crime. In State v. Love, supra, the court reversed a public intimidation conviction upon finding that threats to an officer by an arrested suspect made during transportation to lock up did not provide sufficient evidence of the defendant's intent to influence the actions of the officer in relation to his employment, position or duty. In State v. Meyers, supra, the court reversed the defendant's conviction for public intimidation upon finding that a witness was threatened both before and after the defendant's conviction for theft and thus the evidence was not sufficient to show that the defendant sought to influence the actions of the witness rather than to threaten retaliation or revenge.
The common thread running through these cases is consideration of whether the threats are made in anger as revenge or retaliation or whether they are made in an attempt to influence the conduct of the public officer in relation to her duties. Each case turns on the facts presented.
We find that the Hall and Love cases are distinguishable from this case. In Hall, the defendant continued to threaten the witness even after the charges were resolved by the defendant's guilty plea, which supported the Hall court's conclusion that the evidence failed to exclude the reasonable hypothesis that the defendant acted with a purpose other than to influence the witness' conduct. Likewise, the Love case is distinguishable from the instant case because the defendant was under arrest and in the process of being transported to the police station when he threatened the police officer and the officer's family. In contrast here, the Defendant was not yet under arrest when he threatened Deputy Wingrove. Thus, the threats occurred under circumstances where the Defendant was in a position to attempt to influence the officer's actions to arrest him.
We find that this case is closer to Meyers, in which this Court concluded that a rational trier of fact could have concluded that the defendant used threats upon the deputy clerk, a public employee, with the specific intent to influence her conduct where his threats were accompanied by repeated attempts to get her to photograph him. In the instant case, the threats could have been for no other reason than to prevent arrest after Deputy Wingrove had probable cause for his arrest. Deputy Wingrove had not yet done anything to Defendant for which he could have been retaliating.
At the time the Defendant made the threats, he had not yet been arrested. Deputy Wingrove had only indicated that she wanted to talk to him about the incident that had taken place at the lounge. In that context, prior to arrest that, by his words, he felt was imminent, we find that the circumstantial evidence supports the jury's conclusion and verdict, that when the Defendant threatened Deputy Wingrove with physical violence and employment termination, he did so with the intent to persuade her not to arrest him. Therefore, we find that the evidence was sufficient to support the Defendant's conviction for public intimidation. This assignment of error has no merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to La.C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5th Cir.1990).
The record reflects that the trial judge did not inform the Defendant, at the time of sentencing, of the prescriptive period within which to file for post-conviction relief, as required by La.C.Cr.P. art. 930.8. Therefore, we remand the case with instructions to the trial judge to send written notice of the prescriptive period to the Defendant within ten days of the rendering of this opinion, and to file written proof in the record that the Defendant received the notice. State v. Stelly, 98-578 (La. App. 5th Cir. 12/16/98), 725 So.2d 562, 564.
*793 Accordingly, for the reasons set forth above, we affirm the conviction of the Defendant for the offense of public intimidation, his adjudication as a third felony offender and his sentence to eight years in prison at hard labor.
AFFIRMED.
NOTES
[1] Although the comment is uncensored in the transcript, dashes have been used due to its explicit content.