**REVISED August 9, 2018**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-30667

United States Court of Appeals
Fifth Circuit

**FILED**
August 3, 2018

Lyle W. Cayce
Clerk

TRAVIS SEALS; ALI BERGERON,

                                        Plaintiffs–Appellees,

versus

BRANDON MCBEE; ET AL.,

                                        Defendants,

JEFF LANDRY, Attorney General, State of Louisiana,

                                        Intervenor–Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana

Before SMITH, WIENER, and WILLETT, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

   Louisiana Revised Statutes § 14:122 criminalizes "the use of violence, force, or threats" on any public officer or employee with the intent to influence the officer's conduct in relation to his position.  Travis Seals threatened police

## No. 17-30667

when arrested; he facially challenges Section 14:122 as unconstitutionally overbroad in violation of the First Amendment. The district court agreed with Seals. Because the meaning of "threat" is broad enough to sweep in threats to take lawful, peaceful actions—such as threats to sue a police officer or challenge an incumbent officeholder—Section 14:122 is unconstitutionally overbroad. We affirm the judgment invalidating it.

I.

In December 2014, Seals and Ali Bergeron were arrested for conduct not specifically reflected in the record. Any charge was ultimately dismissed or refused by the district attorney ("DA"). It appears that a neighbor accused Seals and Bergeron of aggravated assault, and the police responded. According to Seals, he was pepper-sprayed and verbally objected to the arrest, threatening "to make lawful complaints" about the officers' conduct. According to the officers, Seals violently resisted and "repeatedly made threats of physical harm."[1] Ultimately, those disputes are immaterial.

Seals and Bergeron filed a complaint against the arresting officer— Brandon McBee—in September 2016, claiming malicious prosecution, conspiracy, and a First Amendment violation. The district court permitted Louisiana to intervene to defend the constitutionality of Section 14:122. Plaintiffs then moved for partial summary judgment on their First Amendment claim, alleging that Section 14:122 is facially invalid as overbroad and content-based. Louisiana cross-moved for summary judgment, replying that plaintiffs lack standing to challenge Section 14:122 because they seek only injunctive relief but face no threat of future injury because no charges have yet been brought.

---

[1] Seals also avers that he was "charged" by the police with violating Section 14:122. Yet Louisiana maintains that police officers don't charge suspects; DAs do that. *See* LA. CODE CRIM. P. art. 61; LA. CONST. art. V, § 26(B) (both providing that DAs have the power to charge).

No. 17-30667

And even with standing, Louisiana insists that Section 14:122 prohibits only unprotected speech, such as true threats or extortion.

The district court held a hearing to sort through standing. Plaintiffs admitted that the DA had stated he had no intention of charging them at that time. But plaintiffs maintained the DA could still prosecute Seals. Louisiana reiterated that the DA has not brought charges but has never disputed that Seals made threats, was arrested, and could be prosecuted under Section 14:122 until four years after the arrest, which is December 2019.[2]

The district court granted plaintiffs' motion, finding standing and declaring Section 14:122 overbroad as applying to constitutionally protected threats. The court enjoined Louisiana from enforcing Section 14:122's prohibition on "threats." Louisiana, through its attorney general, appeals.

## II.

The core case-or-controversy requirement of Article III establishes an "irreducible constitutional minimum of standing."[3] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs must demonstrate that (1) they have suffered an "injury in fact," which is a "an invasion of a legally protected interest" that is "concrete and particularized" rather than "conjectural or hypothetical," (2) there is a "causal connection between the injury and the conduct complained of" such that the injury is "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party

---

[2] Specifically, the court asked, "So there is nothing to preclude the District Attorney from bringing these charges[?]" To which Louisiana's attorney replied, "True. That is—there is that speculative."

[3] Plaintiffs suggest that, because Louisiana intervened only to defend the constitutionality of Section 14:122, it cannot challenge their standing. But standing is jurisdictional and should be addressed "when there exists a significant question about it." *K.P. v. LeBlanc*, 627 F.3d 115, 122 (5th Cir. 2010) (addressing standing *sua sponte*).

not before the court," and (3) the injury likely will "be redressed by a favorable decision." *Id.* (cleaned up).

Moreover, because plaintiffs seek injunctive relief, they must show that "there is a real and immediate threat of repeated injury." *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). Past injury alone is insufficient; plaintiffs must establish a "real or immediate threat that [they] will be wronged again." *Id.* at 111.

Finally, "each element of Article III standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof,'" with the same evidentiary requirements of that stage of litigation. *Bennett v. Spear*, 520 U.S. 154, 167–68 (1997) (quoting *Defs. of Wildlife*, 504 U.S. at 561). Thus, at the summary judgment stage, plaintiffs must "'set forth' by affidavit or other evidence 'specific facts' to survive a motion for summary judgment." *Id.* (quoting FED. R. CIV. P. 56(e)).[4]

Plaintiffs repeatedly assert that the requirements of standing are relaxed in the First Amendment context. That is true, but only as relating to the various court-imposed prudential requirements of standing. *See Sec. of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 954–58 (1984). They still must show that they satisfy the core Article III requirements of injury, causation, and redressability. *See id.*; *Miss. State Dem. Party v. Barbour*, 529 F.3d 538, 545–48 (5th Cir. 2008) (dismissing a First Amendment claim for lack of standing because there was no threat of future injury).

Seals was arrested in connection with making some form of threats to

---

[4] Contrary to plaintiffs' assertion in a supplemental letter, this case was decided on summary judgment. Plaintiffs have no authority to support their position that, even after being granted summary judgment, their standing is reviewed on the pleadings.

No. 17-30667

the police—thus he appears to have violated Section 14:122. Louisiana concedes that Seals was so arrested and is legally subject to prosecution until December 2019. And both parties agree that "a credible threat of prosecution" is sufficient for standing.[5] Plaintiffs "should not be required to await and undergo a criminal prosecution as the sole means of seeking relief."[6]

Louisiana contends, however, that there is no threat of future injury because—as plaintiffs admit—the D.A. has not charged Seals and has expressly disavowed bringing such charges.[7] Thus, the state urges there is no threat of future prosecution.[8]

Whether the government disavows prosecution is a factor in finding a credible threat of prosecution.[9] Yet that is only one factor among many—for example, in *Humanitarian Law Project*, 561 U.S. at 15–16, the Court found

---

[5] *Holder v. Humanitarian Law Project*, 561 U.S. 1, 15 (2010) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

[6] *Id.* (quoting *United Farm Workers*, 442 U.S. at 298); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128–29 (2007); *Joseph H. Munson Co.*, 467 U.S. at 956–57.

[7] According to the complaint, Seals received a *nolle prosequi*—from which plaintiffs urged the court to infer a *bona fide* termination as required for their malicious prosecution claim. That averment is of little significance, however, because a *nolle prosequi* is not a bar to subsequent prosecution. *See* LA. CODE. CRIM. P. art. 693.

[8] Louisiana proffers that the Tenth Circuit has already decided this question. It has not. In both cases cited by Louisiana, the Tenth Circuit was faced with a plaintiff who was arrested and charged but whose charges were either formally dismissed or dropped. *See Ward v. Utah*, 321 F.3d 1263, 1265–66, 1267 n.5 (10th Cir. 2003) (dealing with a plaintiff whose "charges were dropped" and had not alleged "facts that would subject him to prosecution under the statute in the future"); *Phelps v. Hamilton*, 122 F.3d 1309, 1315−16 & n.5 (10th Cir. 1997) (dealing with plaintiffs whose charges were dismissed by jury acquittals). Although the Tenth Circuit held that both sets of plaintiffs lacked standing for injunctive relief based on prior arrests, it is unclear whether that court would reach the same result in the face of an informal promise not to prosecute, as here.

[9] *See, e.g.*, *Humanitarian Law Project*, 561 U.S. at 16 ("The Government has not argued to this Court that plaintiffs will not be prosecuted if they do what they say they wish to do."); *United Farm Workers*, 442 U.S. at 302 ("[T]he State has not disavowed any intention of invoking the criminal penalty provision against unions that commit unfair labor practices. Appellees are thus not without some reason in fearing prosecution[.]").

standing because there was a history of enforcement, and the government would not disavow prosecution.[10]  And in *United Farm Workers*, 442 U.S. at 302, after asking whether the parties were "sufficiently adverse," the Court found standing because, even though the plaintiffs had not yet violated the statute and the statute had never been applied, the government would not disavow prosecution if plaintiffs engaged in their intended course of action.  *Id.*  Significantly, in neither case had a plaintiff been arrested in connection with violating the statute.  After all, "we [do] not require . . . that the plaintiff bet the farm, so to speak."  *MedImmune*, 549 U.S. at 129.

Seals's position mirrors that of the plaintiffs in *United Farm Workers*.  He already bet the farm.  And when he violated Section 14:122, he was arrested.  Louisiana has disavowed prosecution but concedes that Seals actually violated the statute and is legally subject to prosecution.[11]  Moreover, Louisiana has introduced evidence of other enforcement actions that are currently being pursued.  Viewed alongside a review of Louisiana caselaw, that evidence shows that Section 14:122 is not a mere paper tiger but has a real history of enforcement.  Because the scales are at least as balanced as in *United Farm Workers*, Seals, too, has standing to challenge Section 14:122.

This conclusion reflects the fundamental purpose of standing: "to ensure . . . the federal courts are devoted to those disputes in which the parties have a concrete stake."  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000).  Seals plainly has a concrete stake in this litigation because the DA can change his mind and prosecute him.  Plaintiffs "should

---

[10] Specifically, the Court relied on the fact that the government had "charged about 150 persons with violating" the statute at issue.  *Humanitarian Law Project*, 561 U.S. at 16.

[11] *Cf. PeTA, People for the Ethical Treatment of Animals v. Rasmussen*, 298 F.3d 1198, 1203 (10th Cir. 2002) (finding a lack of standing where the government determined that the intended course of conduct did not actually violate the challenged law); *Faustin v. City & Cty. of Denver*, 268 F.3d 942, 948 (10th Cir. 2001) (same).

No. 17-30667

not be required to await and undergo a criminal prosecution as the sole means of seeking relief."[12]  We apply that principle here:  Seals is not required to live under the specter of prosecution for violating a potentially unconstitutional law with nothing more than a non-committal promise as protection.[13]

## III.

We turn to whether Section 14:122 violates the First Amendment.  To show overbreadth, plaintiffs must establish that Section 14:122 encompasses a substantial number of unconstitutional applications "judged in relation to the statute's plainly legitimate sweep."[14]  The "first step in overbreadth analysis is to construe the challenged statute."  *Stevens*, 559 U.S. at 474 (quoting *United States v. Williams*, 553 U.S. 285, 293 (2008)).  Only after that can we decide whether its unconstitutional applications are substantial and render the law unconstitutional.  *Id.*

## A.

The parties dispute the reach of Section 14:122.  We start with the text.

---

[12] *Humanitarian Law Project*, 561 U.S. at 15 (quoting *United Farm Workers*, 442 U.S. at 298); *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 62 (1976) (quoting *Doe v. Bolton*, 410 U.S. 179, 188 (1973)); *Doe*, 410 U.S. at 188; *see also Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2343 (2014); *Cruz v. Abbott*, 849 F.3d 594, 599 (5th Cir. 2017).

[13] Plaintiffs raise another theory of standing: that their future speech is chilled by Section 14:122.  *Compare Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 660–61 (5th Cir. 2006) (holding that the real chilling of intended speech, brought about by a real threat of future prosecution, is enough to establish Article III standing), *with Miss. State Dem. Party*, 529 F.3d at 545–46 (dismissing for lack of standing at summary judgment because plaintiffs had not introduced any evidence of a "firm intention" to engage in proscribed speech or conduct).  We need not opine on that theory because Seals faces a credible threat of future prosecution based on his past violation of Section 14:122 and his arrest.  And because he has standing, we "need not pass upon the status of [Bergeron] in this suit, for the issues are sufficiently and adequately presented by [Seals], and nothing is gained or lost by the presence or absence of [Bergeron]."  *Doe*, 410 U.S. at 189.

[14] *United States v. Stevens*, 559 U.S. 460, 473 (2010) (quoting *Wash. State Grange v. Wash. State Repub. Party*, 552 U.S. 442, 449 n.6 (2008)). Contrary to plaintiffs' assertion, they have the burden of showing overbreadth.  *Virginia v. Hicks*, 539 U.S. 113, 122 (2003).

The statute criminalizes "public intimidation," defined as "the use of violence, force, or *threats* upon [a specified list of persons, including any public officer or public employee] with the intent to influence his conduct in relation to his position, employment, or duty." (Emphasis added.) On its face, the statute is extremely broad. The definition of "threat" generally encompasses any "statement of an intention to inflict pain, injury, damage, or other hostile action on someone in retribution for something done or not done."[15] That definition easily covers threats to call your lawyer if the police unlawfully search your house or to complain to a DMV manager if your paperwork is processed wrongly.

The state, however, contends that Section 14:122 requires a "corrupt intent," which it defines as the intent to obtain something the speaker is not entitled to as a matter of right. According to Louisiana, that gloss—although found nowhere in the text—has been applied by its state courts. And as Louisiana notes, a gloss placed on a state statute by that state's courts is "conclusive on us." [16]

We accept the gloss proposed by Louisiana. Although not explicit, Louisiana caselaw strongly suggests that Section 14:122 requires a corrupt intent, as defined by Louisiana. In *State v. Daniels*, 109 So. 2d 896, 906 (La. 1958), *overruled in part on other grounds by State v. Gatlin*, 129 So. 2d 4 (La. 1961), the court stated that "the crime of 'Public Intimidation' requires the same purpose as that of 'Public Bribery,' the only difference being in the method

---

[15]     *Threat*,     OXFORD     DICTIONARIES     (Online     ed.), https://en.oxforddictionaries.com/definition/threat; *see also Threat*, MERRIAM-WEBSTER (Online ed.), https://www.merriam-webster.com/dictionary/threat (similar); *cf. Threat*, BLACK'S LAW DICTIONARY 1708 (10th ed. 2014) (similar). *Accord Gooding v. Wilson*, 405 U.S. 518, 525 (1972) (using dictionary definitions to interpret a state statute).

[16] *Terminiello v. City of Chicago*, 337 U.S. 1, 5 (1949); *see also Stevens*, 559 U.S. at 474 ("Because [18 U.S.C.] § 48 is a federal statute, there is no need to defer to a state court's authority to interpret its own law.").

employed."[17]    Moreover, the reporter's comments provide that "public intimidation . . . includes the same parties and requires the same purpose as" public bribery.  LA. R.S. § 14:122, cmt.

Then, in *State v. Smith*, 212 So. 2d 410, 411−12 (La. 1968), the court was faced with a vagueness challenge to Louisiana's bribery statute.  The court found the law constitutional, reasoning in part that "the gist of [bribery] is that it tends to corrupt."  *Id.* at 413.  "Bribery must be committed with a corrupt intent, that is, the intent is corrupt when it is to influence official action to obtain a result which the party would not be entitled to as a matter of right."  *Id.* at 415.  (emphasis, citation, and internal quotations omitted).

Thus, Louisiana caselaw can easily be read to say that Section 14:122 requires the same corrupt intent that Louisiana's courts have read into its public-bribery statute.  And nothing in our review of Louisiana caselaw is inconsistent with that requirement.[18]  Accordingly, we assume, but only for purposes of this appeal, that Section 14:122 requires a corrupt intent, defined as the intent to obtain something that the speaker is not entitled to as a matter of right.

Yet we can narrow Section 14:122 no further.  According to the state, we

---

[17] *See also State v. Dauzat*, 284 So. 2d 592, 593–94 (La. 1973) (indicating that public intimidation and public bribery are similar statutes); *State v. Robertson*, 128 So. 2d 646, 649 (La. 1961) (reading a statute in contrast to public intimidation and public bribery).

[18] *See, e.g.*, *State v. Godfrey*, 25 So. 3d 756, 758, 761 (La. 2009) (affirming conviction where defendant told a DA he would "pop-pop" him to influence the DA that the charges should be dismissed as time-barred); *O'Brien v. Town of Glenmora*, 997 So. 2d 753, 758 (La. App. 3d Cir. 2008) (stating that a person cursing at police officers, threatening their jobs, and trying to grab their ticket book during a traffic stop could have intended to avoid arrest); *State v. Burgess*, 876 So. 2d 263, 273–74 (La. App. 3d Cir. 2004) (holding that defendant's statements were unlikely made for the purpose of resisting arrest); *State v. Jones*, 772 So. 2d 788, 792 (La. App. 5th Cir. 2000) (affirming conviction where defendant made threats before arrest and thus likely intended to influence officer against arresting him); *State v. Meyers*, 643 So. 2d 1275, 1276–79 (La. App. 5th Cir. 1994) (affirming conviction where defendant made violent threats to obtain a photograph to which he was not entitled).

should construe the statute to apply only to true threats, i.e. "a serious expression of an intent to commit an act of unlawful violence" toward specific persons.[19]  There are several reasons why we cannot do so.  First, the definition of "threat" is broader than true threats: any "statement of an intention to inflict pain, injury, *damage*, or *other hostile action* on someone in retribution for something done or not done."[20]  Second, the reporter's comments to Section 14:122 provide that the statute "should include threats of harm or injury to the character of the person threatened as well as actual or threatened physical violence."  LA. R.S. § 14:122, cmt.  Thus, the section is not "readily susceptible" to such a limiting construction.[21]

Finally, Louisiana's reliance on its caselaw proves to be a double-edged sword.  As plaintiffs note, the Louisiana Court of Appeals has upheld the conviction of a defendant who violated Section 14:122 by threatening "to sue" an officer and "get [his] job" if the officer arrested him.  *See State v. Mouton*, 129 So. 3d 49, 54, 59 (La. App. 3d Cir. 2013).  Plainly, such a threat suggests no violence—indeed, the threat appears to be a plan to take perfectly lawful actions.  Accordingly, we cannot construe Section 14:122 to apply only to true threats of violence.

It follows that, properly understood, Section 14:122 applies to any threat meant to influence a public official or employee, in the course of his duties, to obtain something the speaker is not entitled to as a matter of right.  But so construed, the statute reaches both true threats—such as "don't arrest me or

---

[19] *See Virginia v. Black*, 538 U.S. 343, 359 (2003).

[20]    *Threat*,    OXFORD    DICTIONARIES    (Online    ed.), https://en.oxforddictionaries.com/definition/threat (emphases added).

[21] *City of El Cenizo v. Texas*, 890 F.3d 164, 182 (5th Cir. 2018) (permitting federal courts to impose limiting constructions on state statutes that are "readily susceptible" to the construction, in order to save them) (citing *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 396 (5th Cir. 2013)).

No. 17-30667

I'll hit you"—and threats to take wholly lawful actions—such as "don't arrest me or I'll sue you."  In both those examples, the speaker may be legally subject to arrest and is trying to influence a police officer in the course of his duties.  Thus, Section 14:122 makes both threats a criminal act.

### B.

Plaintiffs insist that Section 14:122, so construed, is actually a content-based restriction on speech, so we should immediately apply strict scrutiny.  *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226 (2015).  Yet, in so arguing, plaintiffs muddy the sometimes treacherous First Amendment waters; we proceed to provide some clarity.

It is true that, by criminalizing "threats," the statute regulates content.  And, as Louisiana rightly contends, Section 14:122 regulates unprotected content, such as true threats.  *See Black*, 538 U.S. at 359.  But even laws that target only unprotected speech are still "content-based."  Unprotected speech is still speech; true threats and the like may be "quite expressive" and are not "entirely invisible to the Constitution."  *R.A.V. v. City of St. Paul*, 505 U.S. 377, 383–85 (1992).  It is not that true threats are devoid of content; it is that they may "be regulated *because . . . their constitutionally proscribable content*" is not "*essential*" to the "exposition of ideas."  *Id.* (latter quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)).  Thus, a state may constitutionally regulate and proscribe unprotected speech, such as true threats, without triggering a strict-scrutiny review—even though such a regulation is based on content.

That is not to say that a state has *carte blanche* when dealing with unprotected speech.  It may not, for example, regulate only certain kinds of unprotected content based on a criterion that involves protected content—e.g., a law prohibiting only true threats involving particular political ideas.  *See id.*

No. 17-30667

at 385–86.[22] Nor may the government proscribe unprotected content through a regulation that simultaneously encompasses a substantial amount of protected content, "judged in relation" to the unprotected content. *See Stevens*, 559 U.S. at 472–73; *Black*, 538 U.S. at 364–67. Either sort of regulation is a kind of content-based regulation that is constitutionally suspect. The former is subject to "strict scrutiny"; the latter, "overbreadth."

Section 14:122 does not implicate the former limitation. It regulates threats, pure and simple.[23] And by targeting unprotected speech, such as true

---

[22] Thus, in *R.A.V.*, 505 U.S. at 391–95, the Court applied strict scrutiny to a city ordinance that only prohibited true threats based on race, color, creed, religion, or sex. As the Court explained, the ordinance disfavored only fighting words relating to certain topics, and that was content discrimination. *Id.*

Similar to *R.A.V.* is *Reed*. There, 135 S. Ct. at 2227, a signage ordinance was content-based because it defined particular categories of signs by reference to whether the sign communicated a particular message—for example, whether the sign discussed a book by John Locke or favored voting for John Locke. As in *R.A.V.*, the government was regulating a "non-essential" aspect of speech, but in a way that referenced the "essential" content of the speech. *Compare id. with R.A.V.*, 505 U.S. at 385–86 ("The proposition that a particular instance of speech can be proscribable on the basis of one feature (*e.g.,* obscenity) but not on the basis of another (*e.g.,* opposition to the city government) is commonplace and has found application in many contexts. We have long held, for example, that nonverbal expressive activity can be banned because of the action it entails, but not because of the ideas it expresses—so that burning a flag in violation of an ordinance against outdoor fires could be punishable, whereas burning a flag in violation of an ordinance against dishonoring the flag is not. . . . The government may not regulate [for example, a noisy truck] based on hostility—or favoritism—towards the underlying message expressed.").

[23] The fact that the law prohibits only threats against public officials or employees is of no consequence. Content-based regulations are permissible "[w]hen the basis for the content discrimination consists entirely of the very reason the entire class of speech at issue is proscribable." *Black*, 538 U.S. at 361–62 (quoting *R.A.V.*, 505 U.S. at 388). Thus, Louisiana may regulate only unprotected speech, such as true threats, directed against public officials. Such a regulation—picking out only certain kinds of true threats—does not involve drawing lines based on protected speech and is based on the same rationale for denying true threats any First Amendment protection. *Cf. R.A.V.*, 505 U.S. at 388 ("[T]he Federal Government can criminalize only those threats of violence that are directed against the President, *see* 18 U.S.C. § 871—since the reasons why threats of violence are outside the First Amendment (protecting individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur) have special force when applied to the person of the President." (citing *Watts v. United States*, 394 U.S. 705, 707 (1969))). But Section 14:122 does not single out certain kinds of unprotected speech, raising an *R.A.V.* or a

12

No. 17-30667

threats or extortion, Section 14:122 easily has at least some applications that are constitutional. *Cf. Stevens*, 559 U.S. at 472–73; *R.A.V.*, 505 U.S. at 384. But again, that does not automatically ensure Section 14:122's survival. As noted above, the section also targets threats to take wholly lawful actions. Thus we return to our starting point: whether Section 14:122 is unconstitutionally overbroad. *See Black*, 538 U.S. at 363–66.

C.

Evaluating an overbreadth challenge requires exploring a statute's constitutional and unconstitutional applications. According to Louisiana, Section 14:122 has *no* unconstitutional applications because it proscribes only unprotected speech. To be sure, it covers a large swath of unprotected speech, including true threats[24] and core criminal speech, such as extortion[25] and threats to engage in truly defamatory speech made with actual malice.[26] But the statute plainly reaches further. As explained above, Section 14:122 includes threats to sue an arresting officer or even to run against an incumbent unless he votes for a favored bill. *Cf. Mouton*, 129 So. 3d at 54, 59.

Such threats are constitutionally protected. The decision in *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982), is instructive. There, a group of black citizens demanded that public officials desegregate public schools and hire black policeman lest the black community engage in boycotts of private

---

*Black* concern. The problem, as described above, is instead that Section 14:122 sweeps more broadly than unprotected speech.

[24] *See Black*, 538 U.S. at 359–60.

[25] Core criminal speech such as extortion, bribery, or perjury has no First Amendment protection. *See United States v. Quinn*, 514 F.2d 1250, 1268 (5th Cir. 1975) (extortion); *United States v. Irving*, 509 F.2d 1325, 1331 n.5 (5th Cir. 1975) (extortion, blackmail, and assault); *United States v. Varani*, 435 F.2d 758, 762 (6th Cir. 1970) (perjury, extortion, and conspiracy); *see also United States v. Sayer*, 748 F.3d 425, 433–34 (1st Cir. 2014) (noting that "[s]peech integral to criminal conduct" is unprotected speech).

[26] *See New York Times Co. v. Sullivan*, 376 U.S. 254, 267–82 (1964).

businesses; when their demands were not met, the boycotts began. *Id.* at 899–900. Such speech was constitutionally protected even though obviously threatening. *Id.* at 911–13. Moreover, a speech during the boycott contained strong language referencing breaking necks and committing other acts of violence; nevertheless, the Court found the speech protected. *Id.* at 927–29. Yet on its face, Section 14:122 would criminalize all of that speech.

Louisiana reminds us that a statute may be struck as overbroad only if its overbreadth is "*substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292. And the state notes that overbreadth is "strong medicine that is not to be casually employed." *Id.* at 293 (citation and internal quotations omitted). We agree, but here the statute sweeps so broadly, encompassing any number of constitutionally protected threats, such as to boycott communities, to run against incumbents, and to sue police officers. Hence, it is overbroad.

A survey of analogous caselaw supports that conclusion. In *City of Houston v. Hill*, 482 U.S. 451, 455 (1987), the Court was faced with an ordinance that criminalized assaulting, striking, or in any manner opposing, molesting, abusing, or interrupting "any policeman in the execution of his duty." The ordinance prohibited *any* speech that interrupts police officers, thus extending well beyond "core criminal conduct" or true threats. *Id.* at 460–63. Nor was the ordinance "narrowly tailored to prohibit only disorderly conduct or fighting words." *Id.* at 465. Thus, the Court struck it as overbroad. *Id.* at 467.

Similarly, in *Wilson*, 405 U.S. at 519, 528, the Court struck a Georgia statute that prohibited any "opprobrious words or abusive language, tending to cause a breach of the peace." Georgia courts had not limited the statute to fighting words or speech that would immediately cause violence; thus the law swept in protected speech and was overbroad. *Id.* at 524–25. Finally, in *Lewis*

No. 17-30667

*v. City of New Orleans*, 415 U.S. 130, 132 (1974), the Court was faced with a Louisiana statute that penalized cursing or using "obscene or opprobrious language toward or with reference to any member of the city police while in the actual performance of his duty." Again, the Court found overbreadth because the statute extended beyond true threats or speech that would immediately breach the peace. *Id.* at 133.

Section 14:122 is at least as overbroad as the laws that were found to be unconstitutional in those cases. It covers the kinds of constitutionally protected speech identified in *Claiborne Hardware*, 458 U.S. at 889—i.e., threats to boycott unless policies are implemented and minorities are hired as police— and much more. Section 14:122 could encompass an innocuous threat to complain to a DMV manager for slow service or a serious threat to organize lawsuits and demonstrations unless the police lower their weapons. And each kind of threat is constitutionally protected. "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Hill*, 482 U.S. at 462–63. Section 14:122 undermines that freedom and thus is unconstitutional.

## D.

Louisiana offers more replies but none with merit. We examine each.

## 1.

Louisiana claims that plaintiffs have failed to *prove* there have been unconstitutional applications of Section 14:122 and that plaintiffs rely only on hypotheticals and pure speculation. But in the first place, plaintiffs cite *Mouton*, 129 So. 3d at 54, 59, as evidence that the statute has been—and can be—applied to a broad range of speech that has constitutional protection,

including threats to sue police officers. And in the second place, Louisiana demands too much. The Court has declared statutes overbroad even where the government has never prosecuted—and promises it will never prosecute— protected speech. *See Stevens*, 559 U.S. at 480. The First Amendment "does not leave us at the mercy of *noblesse oblige*." *Id.* The same appertains more so here, given that Louisiana has already tried and convicted someone for threatening to sue a police officer and get his job. *See Mouton*, 129 So. 3d at 54, 59.

2.

The state contends that Section 14:122 is similar to statutes upheld in *CISPES (Committee in Solidarity with the People of El Salvador) v. F.B.I.*, 770 F.2d 468 (5th Cir. 1985), and *United States v. Hicks*, 980 F.2d 963 (5th Cir. 1992). Both are easily distinguishable.

In *CISPES*, 770 F.2d at 470 & n.2, 475, we upheld 18 U.S.C. § 112, which in part criminalizes intimidating, coercing, threatening, or harassing a foreign official in the performance of his duties. To be sure, that statute on its face "prohibits such constitutionally protected activities such as picketing and demonstrating." *Id.* at 473. But, critically, we construed Section 112 to avoid such constitutional problems, basing our reading on the statute's safe harbor— "nothing contained in this section shall be construed or applied so as to abridge the exercise of rights guaranteed under the First Amendment"—along with the legislative history and the government's litigating position. *Id.* at 473–74. Essentially, we interpreted it to apply only to unprotected speech. That reading makes *CISPES* entirely different from the present case. Unlike in *CISPES*, we cannot merely read all constitutional applications out of

Section 14:122.[27]   Both its plain text and its administration by Louisiana's courts reveal its application to protected speech.

Neither is *Hicks* availing.   There, defendants were convicted under 49 U.S.C. § 1472(j),[28] which provides criminal penalties against anyone who, while on an aircraft, intimidates members of a flight crew so as to interfere with its duties.   We held it was not overbroad, but for reasons that cannot save Section 14:122.   *See Hicks*, 980 F.2d at 969–70.   In the first place, the *Hicks* defendants had pointed to no potential applications of Section 1472 that were distinct from their own situation.   *Id.*   And as we explained, overbreadth challenges are not permitted where a party raises only situations that are "essentially coterminous" with their own conduct.   *Id.*   Here, conversely, plaintiffs raise numerous hypotheticals that are not coterminous with the conduct for which they were arrested: threatening to report officials for dereliction of duty, threatening to complain to supervisors at the DMV—the list goes on.

Moreover, in *Hicks*, *id.* at 970, there was only a low risk that the statute would transgress constitutional limitations.   As we recognized, Section 1472 criminalized intimidation only *on airplanes*—a "special context of . . . pressurized vessels routinely carrying hundreds of passengers and traveling at speeds of up to 600 miles per hour and 40,000 feet above the ground."   *Id.* at 971–72. Accordingly, even assuming the law was content-based or reached protected speech, it withstood strict scrutiny.   *Id.*; *see also Petras*, 879 F.3d at 167.

---

[27] *See Terminiello*, 337 U.S. at 5 (1949) (reasoning that state glosses on state statutes are "conclusive on us"); *Stevens*, 559 U.S. at 481 (explaining that although courts may construe statutes to avoid constitutional doubts, they may not "rewrite a . . . law to conform it to constitutional requirements" (omission in original) (quoting *Reno v. ACLU*, 521 U.S. 844, 884–85 (1997))); *see also Mouton*, 129 So. 3d at 54, 59 (applying Section 14:122 to a threat to sue a police officer and get his job).

[28] Section 1472 has been succeeded by 49 U.S.C. § 46504, which is materially similar for constitutional purposes.   *See United States v. Petras*, 879 F.3d 155, 160, 166–68 (5th Cir. 2018).

No. 17-30667

The same cannot be said for Section 14:122. The state has no interest in preventing its citizens from threatening boycotts unless they are heard, rallies until a politician resigns, or lawsuits if they are arrested. *Cf. Claiborne Hardware*, 458 U.S. at 886, 889, 911–13. Although, as Louisiana maintains, the state does have an interest in protecting its officers,[29] it cannot do so through a law that simultaneously tramples the core First Amendment freedom "verbally to oppose or challenge [state] action without thereby risking arrest." *Hill*, 482 U.S. at 462–63. Because Section 14:122 does precisely that, it is unconstitutionally overbroad.

3.

Louisiana maintains that Section 14:122 is a time, place, and manner restriction. That assertion was not made before the district court, so it is waived. *See Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir. 2009). Even if not waived, the theory is without merit.

The state relies on *Hicks*, 980 F.2d at 971, which held that the airplane-intimidation statute (Section 1472) was a time, place, and manner restriction. But as we noted in *Petras*, 879 F.3d at 166 n.19, "[i]t is a close call whether *Hicks*'s" time, place, and manner conclusion is still valid given cases like *Reed*. The only reason why Section 1472 could still be considered a time, place, and manner restriction is because it regulated any intimidation—defined as words and conduct that place one in fear—that interferes with a flight crew's duties. *Hicks*, 980 F.2d at 965, 971–72. As we explained in *Petras*, 879 F.3d at 166 n.19, that may be a time, place, and manner restriction because *any* combination of words and conduct may be intimidating on an airplane—the word "intimidation," so defined, may not have any content insofar as a

---

[29] *Cf. CISPES*, 770 F.2d at 474 (recognizing the "undeniably important governmental interest of protecting foreign officials and visitors").

mountain (or someone shouting gibberish) might be "intimidating" in the sense that it causes fear. But that analysis would not apply to laws that target unprotected speech, such as true threats. As explained above, the fact that a statute regulates true threats does not mean it is wholly content-neutral, but only that it discriminates based on constitutionally *unprotected* content. *See R.A.V.*, 505 U.S. at 383–85; *Black*, 538 U.S. at 361–62. Therefore, it would be improper to characterize such a statute as a time, place, and manner restriction.

*A fortiori*, Section 14:122 is not a time, place, and manner restriction. And not only does it encompass unprotected content, it reaches far beyond those constitutional limitations to target threats to complain to a school principal if one gets a bad grade, threats to run against an incumbent unless he votes your way on a bill, or threats to call the media if the police point a gun at you. Those kinds of threats are part of the core First Amendment rights "by which we distinguish [our] free nation from a police state." *Hill*, 482 U.S. at 462–63. Thus, insofar as it criminalizes "threats," Section 14:122 is unconstitutionally overbroad.

The judgment is AFFIRMED.