PER CURIAM:
*886 The court having been polled at the request of one of its members, and a majority of the judges who are in regular active service and not disqualified not having voted in favor ( FED . R. APP . P. 35 and 5TH CIR . R. 35 ), rehearing en banc is DENIED.* In the poll, 8 judges voted in favor of rehearing (Judges Jones, Owen, Southwick, Costa, Ho, Duncan, Engelhardt, and Oldham), and 8 judges voted against rehearing (Chief Judge Stewart and Judges Smith, Dennis, Elrod, Haynes, Graves, Higginson, and Willett).
My esteemed colleagues wish to ensure that the Louisiana statute criminalizing intimidation against public officials by "violence, force, or threats" is not arbitrarily used to stifle constitutionally protected speech. So do we all. But federal courts' ability to "do the right thing" is strictly limited by Article III of the Constitution to cases or controversies. A plaintiff who lacks "standing" to sue has no legitimate federal case. Lujan v. Defenders of Wildlife , 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992). Plaintiff Seals failed two of the three prerequisites to standing. He did not suffer "injury" as the Supreme Court has explained it, and he did not sue the only party against whom federal courts could provide "redress." Because of the threshold lack of justiciability and serious federalism problems presented in this opinion, our court should have undertaken to correct the panel errors en banc.
I. Background and Panel Opinion
Plaintiff Seals was arrested on December 24, 2014 and charged with assaulting his neighbor and violating the Louisiana public intimidation statute in his conduct toward the arresting deputies. The public *887 intimidation statute prohibits "the use of violence, force, or threats" upon any public officer or employee "with the intent to influence his conduct in relation to his position, employment, or duty." La. Rev. Stat. Ann. § 14:122(A) (2010). Seals filed suit in federal court, seeking damages for unconstitutional false arrest and the facial invalidation of the public intimidation law.[1] The district court granted injunctive relief against enforcement of the law.
Agreeing with the district court, this court's panel held that Section 14:122 is unconstitutionally overbroad as to "threats," because the law allegedly criminalizes "threats to engage in lawful activities" against public officials like filing misconduct grievances or lawsuits. The "threats" statute may not be enforced by the parties enjoined even if a suspect threatens to kill individual public officials. See n. 4 infra. The panel held that Seals has constitutional standing to obtain injunctive relief, not because he is being prosecuted under the statute and not because he plans to issue "threats" against public officials in the future, but solely because he "faces a credible threat of future prosecution based on his past violation of Section 14:122 and his arrest." Travis Seals, et al v. Brandon McBee , 17-30667, 898 F.3d at 590, 593-94, 1, 7 n. 13 (2018). The "credible threat" arises only because the state's four-year prescription period has not quite run, and the DA "can change his mind" and decide to prosecute anyway. Seals , 17-30667, 898 F.3d at 595-96, at 6. Additionally, the injunction affirmed by the panel was directed to the wrong party: the Attorney General of Louisiana, who intervened to defend the statute. Under Louisiana's constitution, only the District Attorney had authority to prosecute Seals, but he was not sued.
II. Seals Has No Standing to Sue
Constitutional standing to sue has three prerequisites: an injury in fact, which is concrete and particularized as well as actual or imminent; a causal connection between the plaintiff's injury and the alleged violation; and the likely, not merely speculative, possibility that the injury be redressable by a federal court judgment. See Lujan , 504 U.S. at 560-61, 112 S.Ct. at 2136. In its haste to facially invalidate the Louisiana statute, the panel misinterpreted and misapplied the "injury in fact" and "redressability" requirements of standing.
a. Seals Has Suffered No Injury in Fact
To satisfy Article III, an injury "must be concrete and particularized and actual or imminent, not conjectural or hypothetical." Susan B. Anthony List v. Driehaus , 573 U.S. 149, 134 S.Ct. 2334, 2341, 189 L.Ed.2d 246 (2014) (quotation marks omitted). The Supreme Court has "repeatedly reiterated that 'threatened injury must be certainly impending to constitute injury in fact,' and that '[a]llegations of possible future injury' are not sufficient." Clapper v. Amnesty , 568 U.S. 398, 409, 133 S.Ct. 1138, 1148, 185 L.Ed.2d 264 (2013). The plaintiff has the burden to prove standing. Lujan , 504 U.S. at 561, 112 S.Ct. at 2136. Seals did not carry his burden, and the panel cannot carry it for him.
First, Seals has suffered no "certainly impending" injury. The DA "has expressly disavowed bringing such charges" through the use of a nolle prosequi . Seals , 17-30667, 898 F.3d at 592, at 5. This means that Seals is off the hook for his single alleged violation of the public intimidation statute. The panel rejected the relevance of the nolle prosequi , reasoning that the DA "can *888 change his mind" and decide to prosecute anyway, but conjecture and hypothesis are wholly insufficient to prove a certainly impending injury.[2] In addition, Seals has indicated no intention whatsoever to engage in future conduct that might be challenged under that statute. Thus, the argument for Seals's standing to achieve prospective injunctive relief is based entirely on his past conduct. But see City of Los Angeles v. Lyons, 461 U.S. 95, 102, 103 S.Ct. 1660, 1665, 75 L.Ed.2d 675 (1983) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects") (internal quotation omitted).[3] Finally, the panel opinion attempts to bootstrap the "credible threat" of a Seals prosecution by referring to "evidence of other enforcement actions that are currently being pursued" under Section 14:122 against other people .[4] But there is no legal support for imputing actual injury to one plaintiff on the ground of unrelated prosecutions of other parties in different parishes by different law enforcement officers.
Second, Seals has not suffered an "injury in fact" as more broadly construed in a few cases. Such cases generally involve an activist plaintiff who alleges "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." Babbitt v. United Farm Workers Nat. Union, 442 U.S. 289, 298, 99 S.Ct. 2301, 2309, 60 L.Ed.2d 895 (1979). These cases make sense because they involve plaintiffs who can show an injury by proving credible prosecutorial threats under statutes that cover their personal protected speech or conduct.[5]
*889 City of Houston v. Hill , 482 U.S. 451, 454, 107 S.Ct. 2502, 2504, 96 L.Ed.2d 398 (1987), is typical. There, a well-known civil rights activist had standing to challenge a city ordinance that prohibited "wilfully [sic] or intentionally interrupt[ing] a city policeman ... by verbal challenge ...." The plaintiff faced "a genuine threat of enforcement" because he claimed past systematic harassment by policemen, had been arrested four times under the ordinance, and was "willing[ ] to interrupt officers in the future." Id. at 459, n. 7, 107 S.Ct. at 2508, n. 7. By expressing their views or engaging in advocacy conduct, they inevitably risked imminent, credible threats of prosecution, which imposed a "chilling effect" on their activities. In contrast, the panel opinion here wisely does not rely on the "chilling effect" against Seals because there is none. He is no activist, and he faces no threat whatsoever precisely because he intends no future action in conflict with the statute.
Of course, when a plaintiff wants to challenge "the constitutionality of a law threatened to be enforced," actually violating the law is not always necessary to provide standing. MedImmune, Inc. v. Genentech, Inc. , 549 U.S. 118, 129, 127 S.Ct. 764, 772, 166 L.Ed.2d 604 (2007). The panel opinion seized on this concept, quoting MedImmune for the proposition that "we [do] not require ... that the plaintiff bet the farm, so to speak," by violating a statute in order to challenge it. Seals , 17-30667, 898 F.3d at 590-91, 595-96, 1, 6. But the rationale of MedImmune and similar cases is inapposite to Seals's case for two reasons. First, unlike each of the cases cited by the panel to support this theory, Seals faces no credible future threat of prosecution. Compare Holder v. Humanitarian Law Project , 561 U.S. 1, 16, 130 S.Ct. 2705, 2717, 177 L.Ed.2d 355 (2010) (the government made clear its intention to prosecute terrorist-assisting groups); Babbitt , 442 U.S. at 301, 99 S.Ct. at 2310 (the farmworkers' union had boycotted nonunion products and companies and intended to continue doing so even though the new state statute targeted such activities). Second, Seals has "already bet the farm" by allegedly violating Section 14:122, but he won. Without exposure to either a current or imminent future prosecution, Seals runs no risk and has no bet.
The "bet the farm" basis for standing, in other words, does not dispense with the requirement that every plaintiff, including civil liberties plaintiffs, must prove personal injury as a prerequisite to standing. See Lujan, 504 U.S. at 564, 112 S.Ct. at 2137. Indeed, the test for "injury" was the only issue the Court decided recently in Susan B. Anthony List, 573 U.S. 149, 134 S.Ct. 2334. Taken to its logical conclusion, however, the panel's standalone "bet the farm" rationale swallows the general rule, because this plaintiff has neither suffered nor rationally fears prosecution. The "bet the farm" explanation makes sense and has been applied only where the particular plaintiff has asserted the right to engage in future conduct, and where the plaintiff's conduct inevitably risks a "credible threat" of future prosecution.
b. Seals's Alleged Injury is Not Redressable by a Federal Court
To establish constitutional standing, a plaintiff must also show that it is "likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " Lujan , 504 U.S. at 561, 112 S.Ct. at 2136. When "redress of the only injury in fact ... complain[ed] of requires *890 action" by a non-party, "and any relief the District Court could have provided" against a named party is "not likely to produce that action" by the non-party, then the injury is not redressable by a federal court. Id . at 571, 112 S.Ct. at 2141-42. The only possible redress in this case would be to protect Seals from future prosecution under Section 14:122. In Louisiana, however, as the panel acknowledges, it is the District Attorney alone who may bring charges. See Seals , 17-30667, 898 F.3d 591-92, 2, n. 1. The DA was never a party to this case, and the injunction does not run against him or his office. That other defendants are enjoined-the Sheriff, his deputies, and Louisiana's Attorney General-is irrelevant,[6] because none of these parties assures the only relief that Seals could benefit from. Seals sued the wrong party to obtain effective injunctive relief and his mistaken litigating choice precludes federal court jurisdiction.[7]
III. Conclusion
The doctrine of standing goes to the heart of federal jurisdiction, of judicial restraint, and in this case, federalism itself. It is fatal to the panel opinion that no true "case or controversy" was alleged and proved by plaintiff Seals.
But the panel decision's tension with federalism principles goes deeper. The panel eagerly invoked the "strong medicine" of the overbreadth doctrine, although the Supreme Court has cautioned it should be "employed ... sparingly," Broadrick v. Oklahoma , 413 U.S. 601, 613, 93 S.Ct. 2908, 2916, 37 L.Ed.2d 830 (1973). Caution is due because "[p]remature adjudication of constitutional questions" is particularly troublesome, "for the federal tribunal risks friction-generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court." Arizonans for Official English v.Arizona , 520 U.S. 43, 78-79, 117 S.Ct. 1055, 1074, 137 L.Ed.2d 170 (1997). Section 14:122 has not been constitutionally challenged during the first seventy years of its existence, yet the panel opinion ignored the State's motion to certify the statutory question to the Louisiana Supreme Court.[8] Further, the *891 Supreme Court long ago interpreted the federal statute criminalizing "threats" against the President narrowly to require a "true 'threat' " as opposed to mere political hyperbole. Watts v. United States , 394 U.S. 705, 708, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664 (1969) (per curiam). This background ruling would have been compelling in Louisiana courts attempting to construe a similar state statute to avoid thorny First Amendment problems.
The panel issued what amounts to an advisory opinion unconstrained by the case or controversy requirement of Article III. Its decision too readily finds a conflict between the First Amendment and a Louisiana statute criminalizing threats made with specific intent of a corrupt purpose to influence public officials' conduct. State v. Daniels, 236 La. 998, 109 So.2d 896, 904 (1959). I respectfully dissent from the court's refusal to correct en banc a fundamentally erroneous decision.

In the district court, the defendants raised the question whether the court should abstain under Younger v. Harris , 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The defendants, including the intervenor Attorney General, did not include, as an issue on appeal, anything regarding Younger . It was neither briefed nor argued. Therefore that issue is not properly before us, and we do not address it. We emphasize, however, that nothing in this opinion should be understood as a comment sub silentio on the Younger issue or on the propriety of Younger abstention.

Seals's damage claim remains pending below and is not implicated by the panel opinion.

The panel's conjectural approach is irreconcilable with the well-developed jurisprudence of the Tenth Circuit addressing when the disavowal of prosecution results in the loss of standing to raise constitutional issues. See generally Mink v. Suthers , 482 F.3d 1244, 1253-57 (10th Cir. 2007) (discussing cases and finding no standing where charges were dismissed and prosecutor disavowed the intent to prosecute). As a general matter, "assurances from prosecutors that they do not intend to bring charges are sufficient to defeat standing, even when the individual plaintiff had actually been charged or directly threatened with prosecution for the same conduct in the past." Mink , 482 F.3d at 1253 (citation omitted). While it is true that "a criminal prosecution, even one that is swiftly abandoned, can confer standing," this provides standing to seek "nominal damages and retrospective declaratory relief" only, but not "prospective injunctive relief." Winsness v. Yocom , 433 F.3d 727, 734-35 (10th Cir. 2006) (citation omitted).

The panel's approval of this slim basis for "injury" also conflicts with the Tenth Circuit. See, e.g., Phelps v. Hamilton, 122 F.3d 1309, 1315-16 (10th Cir. 1997) (holding that plaintiffs against whom charges were dropped following an acquittal did not have standing to challenge state law as facially unconstitutional "based solely on past prosecutions").

Although the opinion does not describe those prosecutions, the record demonstrates they are based on threats of physical violence against courthouses, DA personnel, and even a federal judge.

See, e.g., Susan B. Anthony List , 573 U.S. 149, 134 S.Ct. at 2341 (involving a plaintiff political action committee that had been the subject of regulatory action under Ohio campaign finance law and planned to continue publishing messages supporting or opposing candidates); Holder v. Humanitarian Law Project , 561 U.S. 1, 10, 130 S.Ct. 2705, 2714, 177 L.Ed.2d 355 (2010) (involving a plaintiff group evincing an intention to continue funding "terrorist"-designated organizations notwithstanding federal law prohibitions); Virginia v. Am. Booksellers Ass'n, Inc. , 484 U.S. 383, 392, 108 S.Ct. 636, 642, 98 L.Ed.2d 782 (1988) (finding standing where "the law is aimed directly at plaintiffs" who, because of their continuing activity proscribed by the statute, will "have to take significant and costly compliance measures or risk criminal prosecution."); see also Broadrick v. Oklahoma , 413 U.S. 601, 609-10, 93 S.Ct. 2908, 2914-15, 37 L.Ed.2d 830 (1973) (declining to facially invalidate a statute where "appellants did not engage [in the protected activity]," and the statute "would be constitutional as applied [to the appellant's activity]," thus indicating no possible future conflict with the law).

Under Louisiana's constitution, the DA has "charge of every criminal prosecution by the state in his district," and any involvement by the state Attorney General is "indirect and remote." Entm't Software Ass'n v. Foti , 451 F.Supp.2d 823, 827 (M.D. La. 2006) (allowing a free speech plaintiff to seek injunctive relief against a district attorney but dismissing the Attorney General).

The panel's injunction prevents the Louisiana AG from pursuing current, ongoing Section 14:122 prosecutions in exceptional cases where the office was invited to participate by local DAs. This result seems at odds with Younger v. Harris , 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), which squarely forbids federal court interference with ongoing prosecutions. In fact, Younger was the basis on which the district court had stayed its injunction pending this appeal. The panel claims in a footnote that the state "waived" abstention arguments under Younger , but the Supreme Court and this court have not dispatched Younger so abruptly in previous decisions, preferring to find waiver only where the State has stated its preferences expressly. See Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc. , 477 U.S. 619, 625-26, 106 S.Ct. 2718, 2722, 91 L.Ed.2d 512 (1986) ("in each of these cases [where waiver was found] the State expressly urged this Court or the District Court to proceed to an adjudication of the constitutional merits.") (emphasis added); RTM Media, L.L.C. v. City of Houston , 584 F.3d 220, 229 (5th Cir. 2009). Precedent from the Supreme Court and earlier decisions of this court are, of course, controlling over aberrant panel decisions.

The panel's choice to ignore this request is peculiar given the acknowledgement in Broadrick that "[f]acial overbreadth has not been invoked when a limiting construction has been or could be placed on the challenged statute." Broadrick , at 613, 93 S.Ct. at 2916-17. Certification is a ready means to obtain this limiting construction. See Virginia v. Am. Booksellers , 484 U.S. at 395-96, 108 S.Ct. at 644 ("Certification ... is a method by which we may expeditiously obtain [the law's authoritative construction from the Virginia Supreme Court].").